FILED
2012 Mar-08  AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD E. CAUDELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:10-cv-2837-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Richard Evan Caudell ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Plaintiff filed his application for Title II disability insurance benefits on

May 1, 2007, (R. 67), and Title XVI Supplemental Security Income ("SSI") on

February 16, 2007, (R. 88), alleging a disability onset date of February 1, 2005,

(R. 102), due to "back problems" and "neck problems," (R. 107).  Plaintiff's

disability report alleged also that he is unable to work because he "cannot lift

anything over 20 pounds, I [cannot] bend and lift, I cannot stand or sit for very

long periods of time.  I have a lot of pain, I have trouble concentrating because of

my medication." (R. 107).  After the SSA denied his applications on July 25,

2007, (R. 67), Plaintiff requested a hearing on September 7, 2007, (R. 74), and

received one on November 14, 2008, (R. 37).  At the time of the hearing, Plaintiff

was 36 years old with a GED.  (R. 41).  His past relevant work included medium

and unskilled work as a warehouse worker, heavy and unskilled work as a general

farm worker and landscape laborer, heavy and semi-skilled work as a construction

worker and a furnace brick layer, and light and semi-skilled work as a meter reader

and waiter.  (R. 60-61).  Plaintiff has not engaged in substantial gainful activity

since February 1, 2005.  (R. 21).

   The ALJ denied Plaintiff's claims on February 10, 2009, (R. 16), which

became the final decision of the Commissioner when the Appeals Council refused

to grant review on August 20, 2010, (R. 1).  Plaintiff then filed this action

pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Plaintiff is correct that the ALJ committed reversible error.  In that regard, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One.  (R. 21).  Next, the ALJ acknowledged that Plaintiff's severe impairments of "degenerative disk disease, status post anterior cervical diskectomy, status post artificial disk replacement L5-S1, and status post L4-5 anterior and posterior fusion" met Step Two, but that Plaintiff's "psoriasis and psoriatic arthritis are deemed to be non-severe impairments."  *Id*.  The ALJ then

proceeded to the next step and found that Plaintiff did not satisfy Step Three since

he "does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments."  (R. 25).  Although the ALJ

answered Step Three in the negative, consistent with the law, *see McDaniel*, 800

F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Plaintiff

> has the residual functional capacity ["RFC"]to perform a reduced
> range of light work.  As opined by Dr. Beck [ ], [Plaintiff] can
> occasionally lift 30 pounds and frequently lift 10 pounds. [Plaintiff]
> can occasionally bend, stoop, twist, squat, and crouch, and he has no
> limitations in his ability to walk. [Plaintiff] can sit up to one hour at a
> time or stand for up to 30 minutes at a time and he may resume those
> activities if he had the opportunity to change positions for 5 to 10
> minutes.

(R. 25).  In determining Plaintiff's RFC, the ALJ assigned

> little weight [ ] to the opinion of Dr. Gulati who opined [Plaintiff]
> would not be able to do any gainful employment.  Dr. Gulati only saw
> [Plaintiff] on one occasion and he did not treat [Plaintiff], and his
> opinion is not consistent with the medical evidence of record. . . .
> Great weight is give[n] to the opinion of Dr. Beck.  Even though Dr.
> Beck only saw [Plaintiff] on one occasion his opinion is based upon a
> thorough evaluation and test results and it is consistent with the
> medical evidence.

(R. 27).  In light of Plaintiff's RFC, the ALJ held that Plaintiff was "unable to

perform any past relevant work."  (R. 27).  Consequently, the ALJ moved on to

Step Five where he considered Plaintiff's age, education, work experience, and

RFC, and determined that there are "jobs that exist in significant numbers in the

national economy that [Plaintiff] can perform." (R. 28). As a result, the ALJ

answered Step Five in the negative, and determined that Plaintiff is not disabled.

*Id.*; *see also McDaniel*, 800 F.2d at 1030. It is this finding that Plaintiff

challenges in this action.

## V.  Analysis

The court turns now to Plaintiff's contentions that the ALJ committed

reversible error because he (1) assigned Dr. Prem Gulati's ("Dr. Gulati") opinion

"little weight," and Dr. Eric Beck's ("Dr. Beck") opinion "great weight," doc. 8 at

9, and (2) determined that Plaintiff's "psoriatic arthritis did not [ ] reach the

threshold severity requirement at Step 2," *id*. at 11. Based on its review of the

record, the court disagrees with Plaintiff that the ALJ committed reversible error.

A.    *The ALJ did not err in assigning Dr. Gulati's opinion "little weight" and
      Dr. Beck's opinion "great weight."*

First, Plaintiff contends that the ALJ erred in assigning Dr. Gulati's opinion

"little weight" and Dr. Beck's opinion "great weight" because (1) Dr. Gulati and

Dr. Beck evaluated Plaintiff only once, (2) the ALJ failed to "specify in what way

Dr. Gulati's opinion is not consistent with the medical evidence and Dr. Beck's

opinion is," and (3) Dr. Gulati reviewed Plaintiff's medical records and Dr. Beck

did not. Doc. 8 at 9-10. These arguments are unpersuasive.

Before addressing Plaintiff's contentions about Drs. Beck and Gulati, the court will review first Plaintiff's medical history prior to visiting these two physicians.  In that regard, Dr. Cyrus Ghavam ("Dr. Ghavam") treated Plaintiff from May 1999 through February 2006.  In November 2004, Dr. Ghavam performed a micodiskectomy and reported that Plaintiff "did well" the first few days after surgery, but later "developed a sudden recurrence of left lower extremity pain."  (R. 219).  Dr. Ghavam prescribed Medrol Dosepak and Norco for pain.  *Id*.  On March 7, 2005, Dr. Ghavam performed an epidural steroid injection on Plaintiff's discs L4-5 and L5-S1, (R. 211), but noted on March 22, 2005, that Plaintiff's "symptoms were unimproved," (R. 210).  On June 16, 2005, Drs. Ghavam and Richard Randall ("Dr. Randall") performed an "anterior lumbar discectomy and fusion, L4-5" and "anterior L5-S1 discectomy and artificial disc replacement."  (R. 154).  A week later, on June 23, 2005, Dr. Ghavam performed a "posterior intertransverse fusion, L4-5" and "right posterior iliac crest bone graft," and noted that Plaintiff tolerated the procedure well.  (R. 169).

Two weeks later, on July 5, 2005, Dr. Ghavam noted Plaintiff "doing very well and has had excellent improvement with his previous back and leg pains. [ ] Continue with daily walking program."  (R. 209).  The August 16, 2005, note reflected that "overall [Plaintiff] is progressing well. . . .  He feels better than

before surgery." (R. 206). On September 27, 2005, Dr. Ghavam reported that Plaintiff "feels much better," and that he "may return to light activity work. No lifting more than 25 pounds. Bending and twisting is allowed." (R. 205). Lastly, on February 7, 2006, Dr. Ghavam noted that Plaintiff "feels that he is much better than before surgery and even feels in some ways his back is better than even before his work injury." (R. 202). As is evident from the records, Dr. Ghavam's medical notes do not support Plaintiff's contention that he is disabled.

The next physician Plaintiff saw is Dr. Beck, who, on March 30, 2006, completed an Independent Medical Evaluation Report and found that Plaintiff "was a good historian. In terms of consistency with the medical records[1], the history provided was consistent." (R. 231). Dr. Beck noted that Plaintiff stated that he "had a disk section removed at L4-L5 in December 04. I have had L4-L5 fusion and L5-S1 artificial disk put in," and, as a result, "he can sit up to one and [a] half hours at a time, stand up to 40 minutes at a time, and has no significant limitations on walking. He states bending causes problems, particularly such as washing dishes and making beds. He estimates he can lift up to 25 pounds." (R. 232). Dr. Beck reported that Plaintiff described his pain as "throbbing, stabbing,

_____

[1]Plaintiff's contention that Dr. Gulati had an "advantage" over Dr. Beck since Dr. Gulati reviewed Plaintiff's medical records, doc. 8 at 10, is without merit because Dr. Beck also reviewed Plaintiff's medical records.

hot-burning, tiring-exhausting, and sickening" and currently a 4 on a scale of 10.

(R. 233).  According to Dr. Beck, Plaintiff's cervicothoracic inspection, palpation,

and range of motion determination was "normal," (R. 235), and Plaintiff's lumbar

inspection, palpation, and range of motion determination "was normal, except for

the finding of a posterior lumbar scar and abdominal scar [ ]."  (R. 237).  Dr. Beck

diagnosed Plaintiff with "low back pain" and stated that Plaintiff's "subjective

complaints were consistent with the objective findings."  (R. 240).  Dr. Beck

opined that Plaintiff could frequently lift 10 pounds, occasionally lift 30 pounds,

bend, stoop, twist, squat, and crouch, sit up to one hour at a time, stand up to 30

minutes at a time, and walk without restrictions.  (R. 241).  Like Dr. Ghavam, Dr.

Beck's evaluation report does not support Plaintiff's contention that he is disabled.

The next physician who treated Plaintiff is Dr. Mark Murphy ("Dr.

Murphy") of the North Alabama Pain Service, who treated Plaintiff's pain with

methadone from July 2006 though October 2008.  During this period, Plaintiff

reported frequently that after taking methadone his pain rated 6 or less on a 10

point scale, (R. 273, 278, 281, 284, 288, 296, 307, 313, 350, 361, 371, 381, 388,

391, 394, 397, 408, 411, 422, 424, 426, 428, 430, 432, 434, 436, 438, 440, 442)[2],

and Plaintiff often described his pain as interfering with his "general activity" and

---

[2]Plaintiff reported that his pain was a five or less on a ten point scale nineteen times.

"normal work" as a 5 or less on a 10 point scale, (R. 290, 365, 375, 423, 425, 427, 429, 431, 433, 435, 437, 439, 441, 443, 445).  Moreover, Dr. Murphy often noted that Plaintiff requested "no change" in his drug regimen. (R. 275, 281, 350, 361, 372, 381, 391, 394, 402, 414), and that Plaintiff experienced no side effects, (R. 350, 361, 371, 381, 388, 391, 394, 399, 405, 414, 419).  In fact, on June 7, 2007, Dr. Murphy's chart entry reflected that Plaintiff stated that the methadone "does work but it would be nice if I could take some more at night."  (R. 281).  Dr. Murphy made a similar entry on January 4, 2008, that the "[m]ethadone is doing really well," (R. 408).  In short, Dr. Murphy's records substantiate that Plaintiff's pain was controlled by the methadone treatments and refutes Plaintiff's contention that he is disabled because he has "trouble concentrating because of my medication," (R. 107).  To the contrary, the record is replete with examples of Plaintiff's satisfaction with his methadone treatment and Plaintiff's denial of any side effects.

The court turns now to Dr. Gulati, the sole physician who opined that Plaintiff is disabled.  On July 19, 2007, while Plaintiff was still seeing Dr. Murphy, Dr. Gulati completed a disability physical and reported that Plaintiff complained of "low back pain" for three years and "left shoulder and neck pain for the past seven years," and that the "pain is better with pain medication

[methadone] and is worse with activities." (R. 256).  Dr. Gulati's physical examination report stated that Plaintiff "appears to be in a <u>mild</u> amount of distress," and had "<u>mild</u> tenderness" in his cervical spine/trapezoid area and "at the surgical area" of his dorsolumbar spine.  (R. 257) (emphasis added).  Significantly, Dr. Gulati reported that Plaintiff was ambulatory and "did not require assistive device," could "squat and rise up and able to do heel and toe walk without difficulty," and that Plaintiff's graded strength in his upper and lower extremities' major muscle groups was 5/5.  (R. 257-58).  Dr. Gulati noted Plaintiff's range of motion in his cervical spine was flexion of 45 degrees, extension of 45 degrees, right and left lateral flexion of 20 degrees, rotation 45 degrees, and in Plaintiff's dorsolumbar spine was flexion of 60 degrees, extension 10 degrees, right and left lateral flexion 10 degrees and rotation 30 degrees bilaterally.  (R. 257).  Dr. Gulati reviewed Plaintiff's disability records and diagnosed Plaintiff with (1) low back pain syndrome, "possibility of herniated disk could not be ruled out," (2) lumbar radicular pain, (3) status post lumbar fusion, (4) status post cervical fusion, (5) possibility of cervical radicular pain could not be ruled out, and (6) "appears to have a drug addiction."  (R. 258).  Finally, Dr. Gulati opined that Plaintiff "will not be able to do any gainful employment."  *Id*.  This contention is Plaintiff's basis for alleging that he is disabled.

Unfortunately for Plaintiff, Dr. Gulati's opinion that Plaintiff is unable to do any gainful employment is inconsistent with Dr. Gulati's own clinical findings. For example, Dr. Gulati reported that Plaintiff's pain is well controlled with methadone, that he had good strength and range of motion of his extremities and mild tenderness in his cervical and dorsolumbar spine, and that Plaintiff was ambulatory and in mild distress. These findings belie Dr. Gulati's opinion that Plaintiff "will not be able to do any gainful activity." Moreover, Dr. Gulati's opinion is inconsistent with Drs. Ghavam, Murphy, and Beck's reports, and with Plaintiff's own assessment that his pain is well controlled. Where, as here, the medical records of the two treating physicians, Drs. Ghavam and Murphy, clearly refute a consulting physician's finding that Plaintiff is disabled based on a single exam, the regulations permit the ALJ to reject the consulting physician's assessment in favor of the weight of the medical evidence. 20 C.F.R. § 404.1527(d). Therefore, the ALJ's decision to assign Dr. Gulati's opinion "little weight" and "great weight" to Dr. Beck's opinion, which is consistent with treating physicians Drs. Ghavam and Murphy's opinions, is supported by substantial evidence.

B.      *The ALJ did not err in finding that Plaintiff's psoriatic arthritis was not a severe impairment.*

Lastly, Plaintiff contends that the ALJ erred in failing to find that Plaintiff's psoriatic arthritis was a severe condition because the ALJ found that Dr. Joseph Backe ("Dr. Backe") treated Plaintiff's psoriatic arthritis with ointments but "has no evidence that this is correct."  Doc. 8 at 11.  The only evidence regarding Plaintiff's psoriatic arthritis is Dr. Backe's November 11, 2008, letter stating that Plaintiff

> has been a patient of mine off and on for the past several years.  Most recently, he was seen on [the] 28th of October 2008.  At this time, he exhibited large thick psoriatic plaques widely scattered over the body.  Associated with this, he complains of difficulty with arthritic problems of his hands and fingers.  He also has had multiple back operations and suffers debility from his previous back surgeries.
>
> At the present time, I have treated him with topical ointments and creams.  Truly, he needs to consider taking Methotexate or Enbrel for his Psoriasis and Psoriatic Arthritis.  A rheumatology evaluation is highly suggested.

(R. 348).  The ALJ found that Plaintiff's psoriatic arthritis was not severe because

> Dr. Backe indicated he wanted [Plaintiff] to consider taking Methotreaxte or Enbrel for these impairments, at that time, Dr. Backe opted to treat [Plaintiff] with topical ointments and creams.  The record fails to show that these conditions were or have risen to be severe impairments since that time.  Additionally, Dr. Backe also reported in November 2008 that while [Plaintiff] had been a patient of his for the past several years, he had only seen [Plaintiff] on an off and on basis during that time.

(R. 22).  Tellingly, Plaintiff admits that he does "not have Dr. Backe's records."

Doc. 8 at 11.  Further, at the hearing, the ALJ asked counsel for Plaintiff[3] if he had

"any objections to any of our exhibits of record," and counsel answered, "[n]o true

objections other than 11F [Physical RFC Assessment] being in the medical section

since it wasn't completed by, it was completed by a disability specialist but that's

more a matter of where it is in the file."  (R. 39).  In short, to meet his burden of

proving that he is disabled due to psoriatic arthritis, *see* 20 C.F.R. § 416.912(a),

Plaintiff must provide objective medical evidence to support his claims, 20 C.F.R.

§ 404.1528(a) and (b).  Where, as here, Plaintiff failed to provide <u>any</u> medical

evidence to support his contention that his psoriatic arthritis is a severe

impairment, Plaintiff simply cannot establish that the ALJ's finding to the contrary

is error.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination

that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination.  Therefore, the

Commissioner's final decision is **AFFIRMED**.  A separate order in accordance

---

[3]Plaintiff was represented by Richey Whitten at the hearing, (R. 39), and is represented by
Felice Goldstein in this case, doc. 8 at 13.

with the memorandum of decision will be entered.

Done the 8th day of March, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE